SEALED

# UNITED STATES DISTRICT COURT
for the
Eastern District of California

FILED
SEP 1 3 2019
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

| United States of America | ) |
|---|---|
| v. | ) |
| | ) Case No. |
| **Alan GARCIA** | ) |
| | ) |
| | ) |
| *Defendant(s)* | ) |

2:19-MJ-157 AC

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of   May 31, 2019   in the county of   San Joaquin   in the
  Eastern   District of   California  , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 26 U.S.C. § 5861(d) | Possession of an Unregistered Firearm (Silencer) |

This criminal complaint is based on these facts:

(see attachment)

☒ Continued on the attached sheet.

_____
Complainant's signature

ATF Special Agent Matthew Garrett
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/13/19

_____
Judge's signature

City and state:   Sacramento, CA          Allison Claire, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT OF MATTHEW GARRETT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT

I, Matthew Garrett, being duly sworn, depose and state the following:

## Purpose

This Affidavit is made in support of a criminal complaint and arrest warrant for:

### Alan GARCIA

For the following federal law violation:

Possession of an Unregistered Firearm (Silencer), in violation of 26 U.S.C. § 5861(d).

## Affiant's Background and Experience

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF"), United States Department of Justice, and have been so employed since September of 2004. I am a graduate of the Federal Law Enforcement Training Center's Criminal Investigator Training Program and the ATF National Academy's Special Agent Basic Training. I have also completed ATF's Firearms Interstate Nexus Training and Advanced Interstate Nexus Training, and have provided testimony in the Eastern and Northern Judicial Districts of California as an expert witness regarding the specific topic of the interstate nexus of firearms.

2. I have assisted in the execution of more than 80 warrants to search particular places or premises for firearms and/or firearms-trafficking paraphernalia, indicia and other evidence of violations of federal or state firearms statutes. As a result, I have encountered and become familiar with various tools, methods, trends, and paraphernalia and related articles utilized by prohibited persons in possession of firearms and firearms traffickers in their efforts to import, conceal, possess, alter, modify, and sell firearms. I have been actively involved as case agent in excess of 100 investigations and have talked with confidential informants involved in the illegal possession and/or trafficking of firearms, and this has formed the basis of my opinions.

3. As a result of my training and experience as an ATF Special Agent, I am knowledgeable of federal laws relating to firearms, and know that it is unlawful under 26 U.S.C. § 5861(d) for a person to receive or possess a firearm, defined under 26 U.S.C. § 5845(a)(7) to include a silencer. A silencer is defined under 18 U.S.C. § 921(24) as "any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication."

4. The information contained in this Affidavit is based upon my review of the reports and files in the case, conversations with other law enforcement personnel, and my own personal

knowledge. The following is a summary of the facts I believe support probable cause for a federal criminal complaint and arrest warrant.

## Statement of Probable Cause

5. On May 30, 2019, at 6:30 PM, two San Joaquin County Sheriff's Deputies were driving an unmarked Sheriff's vehicle on Interstate 5 in Stockton, California. Deputies initiated a traffic stop on a vehicle with an expired registration. Deputy Kham Kannalikham approached the driver's window and asked the driver, Alan Alfredo GARCIA, to lower his vehicle's window. As Deputy Kannalikham walked up to the driver's side rear window, he could see a white and red Winchester box of ammunition sitting on the passenger side rear seat.

6. The deputy then ordered GARCIA, the sole occupant of the vehicle, to place his hands on the steering wheel, and GARCIA complied. Deputy Kannalikham looked in the rear passenger seat again, and could see in plain view, in the driver's side rear passenger seat, a gold colored upper receiver and part of a black polymer lower receiver to a handgun. Deputy Kannalikham placed GARCIA in handcuffs, and Deputy Stephen Mitchell then escorted GARCIA to the patrol vehicle where he was detained in the back seat pending further investigation.

7. Deputy Kannalikham moved a shirt that was covering the pistol grip to the handgun that he previously observed, and could then see that a 50-round capacity drum magazine was attached to the firearm. The firearm was found to be loaded with 30 unexpended rounds of .40 caliber ammunition. A records inquiry showed that the firearm serial number ADMB311 had no ownership record on file.

8. A box of Winchester ammunition that was on the rear passenger side seat contained 24 unexpended .357 SIG caliber rounds. Deputy Kannalikham observed a black plastic speed loader on the driver's seat along with a black ziplock bag containing 86.6 grams of marijuana. He also recovered a clear plastic bindle containing 2.5 grams net weight of white powder rock-like substance on the center console, which later tested presumptive positive as cocaine through the use of a field NIK test. Deputy Kannalikham also recovered a white iPhone found on the center console. A single unexpended .40 caliber ammunition round was recovered from the front passenger seat along with a clear plastic bindle containing 18.6 grams net weight of marijuana.

9. That same day, the San Joaquin County Sheriff's Department obtained a warrant to search GARCIA's phone. The phone contained numerous photographs of firearms, including one showing a black pistol with a gold slide that was consistent with the firearm recovered by the Sheriff's Department that day. Some of the photographs depicted the firearms being held and displayed by GARCIA. One photograph showed GARCIA holding two stacks of money and several firearms. One photograph was of a firearm with a black cylindrical device attached to the barrel and the caption "Silent!" Many of the photographs were date/location stamped with the location "Stockton-Weston Ranch."

10. Deputy Kannalikham conducted a criminal history inquiry on GARCIA, which did not show any previous felony arrests. He then contacted the Stockton Police Department Gang Violence Suppression Unit (GVSU) and provided them with GARCIA's information. GVSU Detectives Moreno and Gomez advised they knew of "Alan" in the Weston Ranch area of Stockton, who was known to sell and manufacture firearms. The description of "Alan," to include general body tattoo placement, and his residence matched the description of Alan GARCIA and the residence at 1116 Timerwood Lane, in Stockton, which is also in the Weston Ranch area. This address was also the home address GARCIA provided to Deputy Kannalikham during his booking on May 30, 2019. The same address was also listed as GARCIA's home address on his California Driver License.

11. On May 31, 2019, the Stockton Police Department SWAT Team served a search warrant at 1116 Timberwood Lane in Stockton. San Joaquin County Sheriff Deputies then searched the garage and recovered several complete firearms including a Glock Model 23 pistol, a Kahr model CM40 pistol, a Ruger Security 6 revolver, a Browning Buck Mark pistol, a Norinco SKS rifle receiver, and a Ruger SR556 rifle. Additional ammunition and firearm magazines, including those defined as large capacity, were located throughout the garage. Officers found multiple firearms parts and an AR "jig" on a workbench in the garage. The jig would allow a person to convert AR rifle or pistol lower receivers ("blanks") into completed firearms. Deputies also located a brown box next to the main garage door that contained two black firearm silencers.

12. Sheriff's personnel also conducted interviews with the occupants of 1116 Timberwood Lane. Deputy Negrete interviewed Alan GARCIA's father Alfredo Garcia, who stated (in Spanish) that Alan GARCIA took over the garage area, which upset him due to him not being comfortable going in there. He added that his son spends a lot of time in the garage with his friends. He also stated that his son receives a lot of Amazon and other parcels in the mail on a regular basis. He added that he does not open the boxes and does not know what they contain. He advised that Alan grabs the packages and immediately takes them upstairs to his room. Upon being shown the items of evidence that were located in the garage and in Alan's room, Alfredo appeared surprised and advised that he was unaware that Alan had all those items.

13. Deputy Montgomery interviewed Alan GARCIA's sister Cindy Belwood, who she stated that Alan is the only one that uses the garage. She stated that she has never seen any firearms or any ammunition in the house.

14. Detective Novello interviewed Alan GARCIA'a brother-in-law, Devin Belwood, who said that GARCIA usually spends his time at home, either in his upstairs bedroom or in the garage. Belwood identified the garage as GARCIA's area. He further stated GARCIA is the only one who uses the garage. Belwood stated that GARCIA keeps guns and tools to modify guns in the garage. He stated that GARCIA receives a plethora of packages in the mail, which arrive on a daily basis. Belwood said that he believes the packages contain gun parts, and he has heard GARCIA on the phone talking about modifying guns to make them automatic. Detective Novello asked Belwood if GARCIA has any gang affiliations, and Belwood believed that GARCIA was affiliated with Southside Stockton or Blood gangs.

15. In a post-*Miranda* statement, GARCIA said he purchased the 50-round drum magazine from the streets, but could not provide further details. He further stated he had previously removed the slide from the gold plated pistol and replaced it with a slide from a different firearm, and later applied the gold coloring.

16. GARCIA said he did not manufacture firearms, but had previously traded firearms. He stated he is a gun fanatic and enjoys working on firearms, and had been working on firearms for approximately two years. He said he receives most of his firearms from friends who need money. He then helps them by holding onto the gun, while he provides them with money. GARCIA stated everything in the garage on Timberwood is his, including the tools and machines. He further stated his parents do not go in the garage or his room.

17. GARCIA was asked about the silencers located at the residence. GARCIA stated they were for airsoft guns. Officers did not find any airsoft guns during the execution of the search warrant.

18. On August 22, 2019, I examined the two silencers entered into evidence at the San Joaquin Sheriff's Department property room. Upon shining a flashlight down the center of both silencers, I noted that the central cylinders were not solid, but instead had concentric rings along the interior length of the cylinders. These rings are indicative of baffling material which would be engineered to redirect and slow escaping propellant gas when a firearm attached to the silencer is fired. This dissipation of blast force within the silencer would be intended to decrease the sound volume of the firearm being fired.




19. On August 30, 2019, I reviewed a video that was obtained by the San Joaquin Sheriff's Department from the search warrant served upon GARCIA's cellular telephone. The video showed GARCIA handling a Glock pistol with what appeared to be an attached silencer and large-capacity drum magazine.




20. On September 5, 2019, I took custody of the two silencers that the San Joaquin Sheriff's Department had seized from GARCIA's residence on May 31, 2019. On September 6, 2019, I sent the two silencers to the ATF Firearms and Ammunition Technology Division in Martinsburg, West Virginia. On September 11, 2019, Firearms Enforcement Officer Cody Toy notified me that he had examined the submitted items and confirmed that they were silencers.

21. The silencers seized from GARCIA's residence are not marked with serial numbers or other identifying markings, and therefore cannot be registered in the National Firearms Registration and Transfer Record.

## Conclusion

22. As a result of the events described above and my training and experience, there is probable cause to believe that on or about May 31, 2019, Alan GARCIA knowingly possessed a silencer in violation of 26 U.S.C. § 5861(d) in the Eastern District of California.

## Request to Seal

23. Finally, I respectfully request that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application, affidavit, arrest warrant, and Criminal Complaint. Based upon my training and experience, I have learned that individuals actively search for criminal affidavits and arrest warrants over the internet, and disseminate them to other individuals as they deem appropriate, *i.e.*, post them publicly online. Premature disclosure of the contents of this affidavit and related documents

5

jeopardize the warrant's effectiveness, cause the defendant to flee, or endanger the safety of agents serving the warrant.

I swear, under the penalty of perjury, that the foregoing information is true and correct to the best of my knowledge, information, and belief.

_____
Matthew Garrett
ATF Special Agent


Sworn and Subscribed to me on September *13*, 2019:

_____
Hon. Allison Claire
United States Magistrate Judge


Approved as to form:

_____
David W. Spencer
Assistant U.S. Attorney