UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States, | No. 2:19-cr-00179-KJM |
| Plaintiff, | ORDER |
| v. | |
| Alan Alfredo Garcia, | |
| Defendant. | |

Defendant Alan Garcia moves to suppress evidence obtained in a phone and vehicle search following a traffic stop for expired registration tags. As explained in this order, the searches were reasonable and supported by probable cause. **The motion is denied.**

**I.   BACKGROUND**

According to the affidavit filed with the criminal complaint in this case, two sheriff's deputies pulled Garcia over when they saw he was driving a car with an expired registration. Garrett Aff. ¶ 5, ECF No. 1; *see also* Kannalikham Rep., Opp'n Ex. 1, ECF No. 54-1. One deputy saw a box of ammunition in the back seat as he walked past the car. Garrett Aff. ¶ 5. The deputy told Garcia to put his hands on the steering wheel, then looked again in the back seat through the car's window. *Id.* ¶ 6. He noticed part of a gold and black handgun partially covered by a shirt. *Id.*

/////

1

1    The deputies restrained Garcia in their patrol car.  *Id.*  They moved the shirt covering the
2 handgun and found a large drum magazine that could hold 50 rounds.  *Id.* ¶ 7.  The gun was
3 loaded with 30 rounds.  *Id.*  The deputy also saw drugs and an iPhone on the front seat and center
4 console.  *Id.* ¶ 8; Search Warrant & Aff. at 7, Opp'n Ex. 2, ECF No. 54-2.  The phone's screen
5 turned on when a deputy picked it up, showing a picture of Garcia and another person.  Search
6 Warrant & Aff. at 7.

7    The deputies then arrested Garcia, Kannalikham Rep. at 6, and the Sheriff's Department
8 searched the iPhone that night after obtaining a warrant, Garrett Aff. ¶ 9.  Police also obtained a
9 warrant to search Garcia's home, which they did the next day, and found firearms, silencers,
10 ammunition, magazines and tools for assembling rifles.  *Id.* ¶ 11.  The government then filed
11 charges in this court.  *See* Indictment, ECF No. 16.  The indictment charges Garcia with two
12 counts of violating 26 U.S.C. § 5861(d) for possessing silencers not registered to him.  *See*
13 *generally id.*

14    Garcia moves to suppress the evidence found in his car and home.  *See* Mot., ECF No. 51.
15 He argues the deputies did not have probable cause.  *See generally id.*  The government disagrees.
16 *See generally* Opp'n, ECF No. 54.  In reply, Garcia offered new theories about why one of the
17 warrants was issued without probable case, and he submitted new evidence, *see* Reply at 3–4 &
18 Ex. A, ECF Nos. 55 & 55-1, so the court permitted a surreply, *see generally* Surreply, ECF No.
19 60.[1]  The motion was submitted without a hearing.  Since then, the parties have stipulated to
20 continuing the trial date, *see* Min. Order, ECF No. 70, and the Magistrate Judge has ordered
21 Garcia's admission to a drug treatment facility; he was previously released pending trial.  *See*
22 Mins., ECF No. 73; Pre Violation Pet., ECF No. 71; Not. of Pretrial Release, ECF No. 10.

23  **II.    DISCUSSION**

24    When a defendant moves to suppress evidence under the Fourth Amendment's
25 exclusionary rule, the first step is deciding whether a Fourth Amendment violation occurred.
26 *Davis v. United States*, 564 U.S. 229, 236–37 (2011).  Garcia contends three searches occurred: a

---

[1] The court grants *nunc pro tunc* the government's request for leave to file a longer surreply.

2

warrantless search of his car, *see* Mot. at 1, a warrantless search of his iPhone, *see id.* at 2, and a later search of the iPhone with a warrant, *see* Reply at 3–4.  He argues all three searches were unconstitutional.  The court begins with the warrantless search of the car.

      Warrantless searches and seizures violate the Fourth Amendment unless they fall within one of a "few specifically established and well-delineated exceptions." *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993) (quoting *Thompson v. Louisiana*, 469 U.S. 17, 20 (1984) (per curiam)).  One of these exceptions is the so-called "automobile exception," *United States v. Brooks*, 610 F.3d 1186, 1193 (9th Cir. 2010), first recognized almost 100 years ago, *see Carroll v. United States*, 267 U.S. 132, 153 (1925).  Under this exception, police may search a car if they have probable cause to believe it contains contraband or evidence of a crime.  *See California v. Acevedo*, 500 U.S. 565, 569–71 (1991).  Police have probable cause when "there is a fair probability that contraband or evidence of a crime will be found" under the circumstances.  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

      The search of Garcia's car was permissible under this exception.  The deputy who searched Garcia's car first saw a box of ammunition, then a partially covered gold and black handgun through the car's windows.  Garrett Aff. ¶ 5.  Carrying a concealed handgun in a car is illegal in California.  *See* Cal. Penal Code § 25400(a).  California appellate courts have also held many times over the years that a firearm is "concealed" for purposes of the state's gun laws even if it is only partly or ineptly concealed.  *See People v. Bernardo*, No. D071728, 2017 WL 4981386, at *1 (Cal. Ct. App. Nov. 2, 2017) (unpublished[2]); *People v. Aguilar*, 245 Cal. App. 4th 1010, 1017 (2016); *People v. Tarkington*, 273 Cal. App. 2d 466, 469 (1969).  The same is true of partially concealed firearms in cars.  *See, e.g.*, *People v. Hale*, 43 Cal. App. 3d 353, 355–56 (1974); *People v. Koehn*, 25 Cal. App. 3d 799, 802 (1972); *People v. Linden*, 185 Cal. App. 2d 752, 757 (1960).  In one of these cases, for example, officers saw the butt of a pistol "protruding

---

[2] Although the California Rules of Court would prohibit the citation of this unpublished decision in a state court, those rules do not apply in federal courts, which may review and consider unpublished appellate decisions for their persuasive (but not precedential) value.  *See Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 943 n.4 (9th Cir. 1997); *Inland Concrete Enterprises, Inc. v. Kraft*, 318 F.R.D. 383, 405–06 (C.D. Cal. 2016).

from beneath two pillows," and the court agreed the officers had probable cause to suspect an illegally concealed firearm. *Linden*, 185 Cal. App. 2d at 757; *see also, e.g.*, *Hale*, 43 Cal. App. 3d at 355–56 (gun was concealed even though officers could see "the housing and barrel"). Officers who see a partially or incompletely covered firearm also have reason to suspect that other firearms or firearm parts are illegally concealed nearby, such as the large drum magazine in Garcia's car. *See Hale*, 43 Cal. App. 3d at 355–56. Because the deputies saw a partially concealed handgun through the window of Garcia's car, there was a fair probability that a search would yield evidence of a concealed firearm and a violation of section 25400(a).[3] The box of ammunition, which the officers also saw, reinforces this conclusion. The search of the car therefore was based on probable cause, and it did not violate Garcia's Fourth Amendment rights.

Garcia contends the officers had no probable cause because the Second Amendment permitted him to carry a partially concealed firearm. *See* Reply at 2–3. He also points out that the Ninth Circuit has not decided whether California's definition of "concealed" is constitutional under the Second Amendment. *See id.* But the Ninth Circuit has upheld California's concealed firearms statutes against a Second Amendment challenge. *See generally Peruta v. County of San Diego*, 824 F.3d 919 (9th Cir. 2016) (en banc). Deciding whether an officer has probable cause is not an exercise in hypothesizing constitutional challenges and resolving them; it is a question of what facts the officer knew and the state's applicable criminal law. *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1076 (9th Cir. 2011) (per curiam).

The second search Garcia cites does not obviously qualify as a "search" in Fourth Amendment terms. A deputy picked up Garcia's iPhone and its screen lit up, showing a picture of Garcia and another person. *See* Reply at 1–2; Search Warrant & Aff. at 7. If this was truly a Fourth Amendment "search," then there are two possibilities. First, if the deputy's discovery was inadvertent, it did not violate the Fourth Amendment. *See, e.g.*, *United States v. Giberson*, 527 F.3d 882, 890 (9th Cir. 2008) (affirming order denying suppression of evidence discovered

---

[3] The court has not considered the photograph submitted with Garcia's reply. *See* Reply at 1 & Ex. A, ECF No. 55-1. He cites no evidence to show the picture shows the same view the deputy avers he saw as he came alongside the car. Garrett Aff. ¶ 5.

1    inadvertently during permissible search for different object); *Roe v. Sherry*, 91 F.3d 1270, 1272

2    (9th Cir. 1996) (holding officers could seize inadvertently discovered evidence in plain view).

3    Second, if the officer acted intentionally, the search was permissible.  Officers may seize, turn

4    off, and secure cell phones to prevent the loss of evidence in a situation like this one, *see Riley v.*

5    *California*, 573 U.S. 373, 388 (2014), and it is impossible to turn off and secure a phone without

6    checking whether it is on.

7           Even if Garcia could prove there was a search of the iPhone and the search was

8    unconstitutional, exclusion would serve no useful purpose.  *See Nix v. Williams*, 467 U.S. 431,

9    444 (1984); *see also United States v. Reed*, 15 F.3d 928, 933 (9th Cir. 1994) ("The mere inclusion

10   of tainted evidence in an affidavit does not, by itself, taint the warrant or the evidence seized

11   pursuant to the warrant." (citation omitted)).  The only evidence the officer obtained was a picture

12   of Garcia and another man.  Given that the phone was in the car with Garcia, the ammunition and

13   the handgun, excising references to the photo from the search warrant application would not have

14   prevented the government from establishing probable cause.  At most, the picture confirmed an

15   already likely conclusion: the phone belonged to Garcia.  It was in the car Garcia was driving, and

16   he was alone.  *See* Search Warrant & Aff. at 7.  Having obtained a warrant, officers would have

17   searched the phone and found the picture.

18          Third and finally, Garcia argues officers obtained the search warrant for his phone without

19   probable cause.  *See* Reply at 3–4.  The affidavit submitted with the warrant application described

20   the evidence the deputies hoped to obtain and why they believed they would find it:

21   - It described the traffic stop and the deputies' discovery of a handgun, 50-round
22     magazine, ammunition, drugs and the iPhone.  *See* Search Warrant & Aff. at 7.
23   - It summarized an inventory search of the car after deputies arrested Garcia and
24     towed his car.  *Id.*  This inventory search confirmed marijuana and cocaine were in
25     the car.  *Id.*
26   - A sheriff's deputy explained that in his experience, many people who illegally
27     possess drugs and firearms take and post incriminating pictures and send
28     incriminating text messages with smartphones.  *Id.* at 5.

- The deputy also explained that he expected the iPhone would include information confirming it belonged to Garcia, such as contacts, messages to friends or location history. *See id.*

The application thus requested a warrant to search the phone for communications, location data, pictures, video, audio, internet search history and ownership data. *See id.* at 3.

Here, the state court magistrate was within the bounds of the Fourth Amendment in finding the necessary "fair probability" that pictures, social media posts, text messages, and location data likely located in the phone could be evidence of gun and drug-related crimes by Garcia. *Gates*, 462 U.S. at 238. This court is in no position to "flyspeck the affidavit through de novo review," but must rather pay "'great deference'" to the magistrate's conclusions. *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (en banc) (quoting *Gates*, 462 U.S. at 236).

Garcia also argues briefly in reply that the warrant was overbroad, citing the Supreme Court's decision in *Riley v. California*. *See* Reply at 4 (citing 573 U.S. at 403). In *Riley*, the Court weighed the reasonableness of a warrantless search of a cell phone incident to an arrest. *See id.* at 385, 395 n.1. Here, by contrast, Garcia is challenging a search conducted long after his arrest with a warrant. In *Riley*, the Supreme Court did not determine how a district court should decide a warrant is overbroad. The Ninth Circuit has addressed this question. *See, e.g.*, *United States v. Alvarez*, No. 20-00086, 2020 WL 4701179, at *6 (N.D. Cal. Aug. 13, 2020) (citing *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986)). In answering the question, this court must consider several factors. *See id.* Garcia does not analyze them. The court declines to undertake that exercise on its own. Nor will it consider undeveloped arguments asserted in passing. *See Lexington Ins. Co. v. Silva Trucking, Inc.*, No. 14-0015, 2014 WL 1839076, at *3 (E.D. Cal. May 7, 2014).

### III. CONCLUSION

**The motion to suppress is denied.** This order resolves ECF No. 51.

IT IS SO ORDERED.

DATED: January 26, 2022.

_____
CHIEF UNITED STATES DISTRICT JUDGE